322 So.2d 485 (1975)
Lloyd SWAN, Appellant,
v.
STATE of Florida, Appellee.
No. 45452.
Supreme Court of Florida.
September 3, 1975.
*486 Phillip A. Hubbart, Public Defender, and Roy S. Wood, Jr., Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Gerry B. Rose, Asst. Atty. Gen., for appellee.
BOYD, Justice.
In this cause we are reviewing Appellant's conviction of murder in the first degree and a sentence of death imposed by the Circuit Court of Dade County, as required both by the Florida Constitution[1] and by statute.[2]
The facts of the case are as follows.
Prior to leaving for Europe the occupants of a Dade County home employed the victim, one Honey Reh, to reside in and maintain the house during their absence. The victim was last seen alive and in her usual physical and mental health by a friend during the evening of May 29, 1973, when a neighbor left her alone in the home for the night. About 9:30 a.m. the following morning two neighbors found Honey Reh in a semi-conscious condition on the floor of the home, badly bruised and beaten. Her hands, neck and left foot were tied so that any efforts she might have made to free herself could have choked her to death. She was tied with strips of cloth from a bedspread, and her mouth was gagged with a silk stocking. She never full regained consciousness and died in a hospital on June 6, 1973.
Both the testimony of a deputy medical examiner from his autopsy and the testimony of a treating physician, along with hospital records, gave sufficient proof for the jury to find that death resulted from the severe beating administered by Appellant and his co-defendant, who received a life sentence.
The purpose of the crime was robbery or burglary. A television set, money and other items of value were taken from the premises. Because the death occurred in connection with robbery or burglary the prosecution of Appellant was under the felony murder provision of Florida Statutes.[3]
*487 The forty-nine year old female victim was five feet and five inches tall and weighed 171 pounds. Medical and post mortem examinations showed she had previously suffered a heart attack, stroke, arteriosclerosis and, apparently, diabetes. At time of death, a week after her beating, she had a severe thrombosis which decreased blood flow to her brain, gangrene in her right foot, broken vertebrae near her skull, pneumonia, and septic shock.
The defense tried in vain to show death was caused by prior existing physical infirmities and not by the attack made by Appellant and his partner in crime. He tried indirectly to show that if Honey Reh had been in good physical condition she whould not have died from the trauma caused by the beating, binding, and gagging. The jury and court properly ignored this position as defense evidence and argument. Criminals take their victims as they find them. Appellant can not be excused from guilt and punishment because his victim was weak and could not survive the torture he administered.[4] If the jury could have concluded reasonably that the wounds resulting from the beating administered by the Appellant and his co-defendant caused or materially contributed to the victim's death, it was proper to find Appellant guilty.[5]
Appellant further complains that pictures taken of the victim at the scene of the crime and at the medical examiner's office after death should not have been admitted as evidence. He argues that they inflamed the passions, feelings and prejudices of the jury. This Court has examined the pictures and, indeed, they show gruesome scenes, especially while the victim was lying on the floor after the attack. This Court has previously held on several occasions, however, that gruesome and gory photographs may and should be admitted if they properly depict the factual conditions relating to the crime and if they are relevant in that they aid the court and jury in finding the truth.[6] Photographs serving only to create passion should be rejected.[7]
Appellant also attacked the constitutionality of Florida's capital punishment statutes.[8] In State v. Dixon,[9] Chief Justice Adkins wrote a thorough opinion adopted by the majority of this Court holding these statutes valid and constitutional; no purpose is served here in reciting the conclusions reached therein.
All other matters raised have been carefully considered, and we find only one part of the court's finding and judgment which should be modified.
As provided by statute, after its verdict of guilty the jury was convened to hear evidence of aggravating[10] and *488 mitigating[11] circumstances upon which to base its recommendation for either a life or death sentence. The State offered nothing further to show the necessity for electrocution, and the only evidence offered by the Appellant was that he was nineteen years of age when the crime was committed. Shortly afterwards, although the jury recommended life sentences for Appellant and his co-defendant, who was sixteen years of age at the time of the crime, the trial judge imposed a life sentence on the other defendant but imposed a sentence of death upon the Appellant. The court conducted an independent investigation of other court records, finding that Appellant had entered a guilty plea to resisting arrest with violence on May 8, 1973, for which he was adjudicated guilty and sentenced to two years of imprisonment on June 19, 1973. The murder of Honey Reh was on May 29-30, 1973; therefore, the adjudication of guilt occurred after the murder. The trial judge reported this but stated that he could not consider it as a basis to impose a death sentence. After final discharge of the jury, the court held a hearing to receive testimony from a psychologist about a mental weakness of Appellant and also to examine a psychiatric report from a prior criminal hearing.
The Appellant contends that the Legislature did not intend for such evidence as the above or for presentence investigation reports (P.S.I.) to be considered by the trial judge in determining the sentence to be imposed. These contentions are without merit. Section 921.141(1) provides that in the proceeding to determine the sentence that
"... evidence may be presented as to any matters that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in sub sections (6) and (7). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements." Fla. Stat. § 921.141(1). (Emphasis added)
As can be seen, the statute expressly permits the use of such evidence. Similarly, this Court expressly approved of the use of P.S.I. reports in such instances in Songer v. State, 322 So.2d 481 (Fla. opinion filed September 3, 1975).
P.S.I. reports are provided for in Fla.R.Cr.P. 3.710. Rule 3.710 vests the trial court with the discretionary power to *489 request a P.S.I. report in cases wherein the trial court possesses discretion as to the imposition of sentence. Section 921.141, Florida Statutes, vests the trial court with the limited discretion to impose either the death penalty or life imprisonment even if the jury recommends to the contrary. Thus, the discretionary nature of Section 921.141 brings it within the ambit of Rule 3.710. Section 921.141 did not amend or repeal Rule 3.710, which was adopted by this Court pursuant to its constitutional authority. The Legislature may repeal such rules by a two-thirds vote. Article V, § 2(a), Fla. Const. However, the Legislature's power to abrogate a court rule extends only to repeal and does not include the power of amendment. In re Clarification of the Florida Rules of Civil Procedure, 281 So.2d 204 (Fla. 1973). See Carmel v. Carmel, 282 So.2d 9 (Fla.3d Dist. 1973); Lyden v. State, 281 So.2d 591 (Fla.4th Dist. 1973). We must presume that the Legislature enacted Section 921.141 with deliberation and with the full knowledge of the existence of this Court's constitutional authority to adopt the rule, and of its (Legislature's) power to repeal the rule by a two-thirds vote. See Tamiami Trail Tours, Inc. v. Lee, 142 Fla. 68, 194 So. 305 (1940). It must also be presumed that the Legislature would not attempt to repeal such an important rule without expressing the intent to do so. Tamiami Trail Tours, Inc. v. Tampa, 159 Fla. 287, 31 So.2d 468 (1947); Curry v. Lehman, 55 Fla. 847, 47 So. 18 (1908); DeConingh v. City of Daytona Beach, 103 So.2d 233 (Fla.1st Dist. 1958).
In imposing the death sentence sub judice, the trial court found that the aggravating circumstances outweighed those mitigating circumstances and that the crime was outrageously wicked, vile, atrocious, cruel and heinous. While we recognize that the statute leaves the sentencing to the trial court, there is a specific duty imposed on this Court to consider the record in order to assure that the punishment accorded a criminal will meet the standards prescribed in Furman v. Georgia.[12] Having considered the total record, we are of the opinion that there were insufficient aggravating circumstances to justify the imposition of the death penalty. We think the Court should have followed the jury's recommendation for punishment.
For the above reasons we affirm the conviction, however we remand this cause to the trial court for reduction of the death sentence to life imprisonment without eligibility for parole for twenty-five years.
It is so ordered.
ADKINS, C.J., OVERTON, J., and DuVAL and HARTWELL, Circuit Judges, concur.
ROBERTS, J., concurs in part and dissents in part:
"I would affirm the trial court as to Judgment of Guilty and sentence."
NOTES
[1] Article V, Section 3(b) (1), Florida Constitution:

"(b) Jurisdiction.  The supreme court:
(1) Shall hear appeals from final judgments of trial courts imposing the death penalty ...;"
[2] Section 921.141(4), Florida Statutes:

"Review Of Judgment And Sentence.  The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of Florida within sixty (60) days after certification by the sentencing court of the entire record, unless the time is extended for an additional period not to exceed thirty (30) days by the Supreme Court for good cause shown. Such review by the Supreme Court shall have priority over all other cases and shall be heard in accordance with rules promulgated by the Supreme Court."
[3] Section 782.04(1) (a), Florida Statutes:

"782.04 Murder
"(1) (a) The unlawful killing of a human being ... when committed by a person engaged in the perpetration of ... robbery, burglary ... shall be murder in the first degree and shall constitute a capital felony, punishable as provided in § 775.082." [i.e., "by life imprisonment and (defendant) shall be required to serve no less than twenty-five calendar years before becoming eligible for parole ... (or) by death."]
[4] Baker v. State, 30 Fla. 41, 11 So. 492 (1892) [overruled in part on other grounds in Tipton v. State, 97 So.2d 277 (Fla. 1957)].
[5] Brinson v. State, 144 Fla. 228, 198 So. 15 (1940).
[6] Brooks v. State, 117 So.2d 482 (Fla. 1960); Blake v. State, 156 So.2d 511 (Fla. 1963); Dillen v. State, 202 So.2d 904 (Fla.App. 1967), cert. dism., 209 So.2d 674; Wasley v. State, 244 So.2d 418 (Fla. 1971); State v. Wright, 265 So.2d 361 (Fla. 1972); Bauldree v. State, 284 So.2d 196 (Fla. 1973).
[7] Reddish v. State, 167 So.2d 858 (Fla. 1964); Calloway v. State, 189 So.2d 617 (Fla. 1966).
[8] Sections 775.082, 775.04 and 921.141, Florida Statutes, inter alia.
[9] State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. den., 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295.
[10] Section 921.141(5), Florida Statutes:

"(5) Aggravating Circumstances.  Aggravating circumstances shall be limited to the following:
(a) The capital felony was committed by a person under sentence of imprisonment.
(b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person.
(c) The defendant knowingly created a great risk of death to many persons.
(d) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb.
(e) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
(f) The capital felony was committed for pecuniary gain.
(g) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
(h) The capital felony was especially heinous, atrocious, or cruel."
[11] Section 921.141 (6), Florida Statutes:

"(6) Mitigating Circumstances.  Mitigating circumstances shall be the following:
(a) The defendant has no significant history of prior criminal activity.
(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
(c) The victim was a participant in the defendant's conduct or consented to the act.
(d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
(e) The defendant acted under extreme duress or under the substantial domination of another person.
(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
(g) The age of the defendant at the time of the crime."
[12] 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).