323 So.2d 557 (1975)
Thomas A. HALLIWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 45885.
Supreme Court of Florida.
December 3, 1975.
*559 James A. Gardner, Public Defender, and Elliott C. Metcalfe, Jr., Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for appellee.
PER CURIAM.
Pursuant to Article V, Section 3(b)(1), Florida Constitution we are reviewing the first degree murder conviction and sentence of death imposed upon Appellant by the Circuit Court of Hillsborough County.
The facts are as follows.
On January 17, 1974, the dismembered body of Arnold Tresch was found in Cypress Creek at Thirtieth Street in Tampa, Florida. The upper torso was in a garbage can taken from a store known as "The Hearth," the name of the business being marked on the container. (Appellant's diving shop, where the crime occurred, is located next door to "The Hearth.") The lower torso and the amputated legs were found nearby in Appellant's footlocker which had been left with Appellant's former wife until after the murder. Appellant had gone to her home and had gotten it to use in disposing of the body. After killing Tresch on the morning of January 9, 1974, Appellant confessed that he stored the body until he could find time to dismember it, conceal the pieces, and remove them to Cypress Creek the following day.
In the early morning of January 18, 1974, he was arrested at the scene of the crime by a Hillsborough County detective; his shop was searched with his written permission, the detective finding blood on the floor as well as bloody human flesh on a saw, a machete and a bloody breaker bar which Appellant said later was the death weapon. After being arrested at his shop and receiving and signing his constitutional Miranda[1] warnings he was taken to an interrogation room for over two hours where he was twice given Miranda warnings. He was told by policemen that Sandra Tresch, the widow of his victim, and with whom he was involved in an illicit romantic affair, had confessed that she had killed her husband with a spear gun. Appellant requested a visit with her and then confessed that he alone was the killer, having become so angry over the victim's bragging about having beaten Sandra that he beat him to death, unable to stop the fatal blows once he began. Arnold weighed almost two hundred pounds, and Sandra weighed slightly over one hundred pounds; Appellant, also a large man, was a diving instructor who often worked in diving with Arnold and socialized with him and Sandra.
In attempting to renounce his confession, Appellant claimed the officers tricked him by saying that Sandra had confessed. The record does not show whether she ever actually confessed, but the Assistant State Attorney told the jury in the penalty section of the bifurcated trial that he could not call Sandra as a witness because she was still a suspect in the crime and had been arrested twice but not formally charged. There is no basis to reject his confession because of her purported statements of guilt.
*560 After Appellant was formally charged but later in the morning of January 18th, Officer Edward Brodesser of the Tampa City Police visited Appellant as a personal friend, during which visit the Officer inquired as to Appellant's guilt. In answer to his friend's questions Appellant, by nodding his head affirmatively and with a few words, admitted killing Arnold Tresch because of his love affair with Sandra.
Appellant tried to suppress the confessions made to the detective shortly after the arrest, but since he had received Miranda warnings three times before his first oral confession, we see no sufficient basis to reverse the trial court's refusal to grant the motion to suppress. Appellant also moved to suppress his oral confession to his friend Officer Brodesser on the grounds that he was a personal friend and that as a city policeman he had no jurisdiction in the Hillsborough County investigation. In State v. Oyarzo[2] we held that friendly and courteous treatment of a prisoner after Miranda warnings did not invalidate the warnings nor taint a subsequent confession made with the belief that the defendant was among friends. After being warned of his rights, admissions of guilt made by a defendant to anyone not privileged (such as his attorney) may be used subject to proper legal objections, such as duress or mental incapacity.
Although soon after Appellant's arrest he assumed full liability for the murder and tried to exonerate Sandra, he told a different story at the trial. Appellant testified that he left Arnold Tresch in charge of his diving shop on the morning of the murder while he took his truck to a garage for repairs, returning about two o'clock p.m. Appellant said that, when he entered the shop, Sandra was hysterical and had blood on her hands; that after seeing the dismembered body of her husband in the blood-soaked back room, he had her wash he hands and go home; that he then proceeded to arrange for the ultimate removal of the body to Cypress Creek. Sandra had not visited him during the 102 days he had been in jail, and his ardor for her appeared to have diminished.
Several questions remain unanswered. A bloody jacket with a name unknown to Appellant or the police was found with the body. Sandra, on advice of Appellant, did not report Arnold missing until the day before he was found. Appellant drove Arnold's car and abandoned it at Lakeland, claiming Sandra followed him and returned him to Tampa. Appellant, a professional diver, was very strong and could have removed the body without the bloody dismemberment. It was inferred that perhaps a smaller person had done it because of inability to remove it as one unit.
Appellant also claimed that he did not confess and that he had asked for a lawyer before he confessed. At his request efforts were made by policemen, and the public defender visited him, but said he was not sufficiently in need financially to qualify for his representation. Appellant later got private counsel who represented him well at the trial.
The jury chose to believe the State's witnesses about the oral confessions and that he had not timely requested a lawyer. The record shows the jury was authorized to make such findings.
Appellant complained that the gruesome pictures of the victim's body inflamed the jury and should have been excluded as evidence. We have carefully considered the matter and feel they assisted the jury, were relevant and were not unduly prejudicial to Appellant. Those who create crimes of violence often must face the record of their deeds in court.
At the end of the trial and too late for evidence to be admitted, the State informed Appellant that a pair of female shoes, which were covered with blood, had been found in the large tool box taken by *561 officers from the murder scene. A motion for new trial based on this new evidence was filed after the filing of a notice of appeal, but it was not disposed of by the trial court. Taken in the light most favorable to Appellant, it would show that a woman was present during or after the murder, but the shoes alone would not vindicate Appellant. Although we are concerned over the matter, we find no basis for that evidence alone to cause a new trial. If subsequent related evidence should be discovered, this Court could take appropriate action in the interest of justice.
Appellant complains that certain records of proceedings against Sandra Tresch were included in this record. This Court has granted Appellant's motion to strike that portion of the record, so that the matter has already been resolved.
Appellant attacks the Florida death penalty statute as unconstitutional by imposing cruel and unusual punishment. In State v. Dixon[3] we held that statute valid. Other points raised by Appellant and not discussed herein have been considered, but we find them without merit.
Concerning the pictures and testimony of dismemberment, we note with interest that the jury was out of the courtroom only fifty-five minutes in order to find Appellant guilty of first degree murder, and only thirty-five minutes to recommend the death penalty in the bifurcated trial. We cannot read the minds of jurors, but it is reasonable to suspect that the hideous and gruesome conduct of Appellant in dismembering the body several hours after the murder probably was considered by the jury in recommending the death penalty.
Sections 921.141(5) and (6), Florida Statutes, require the jury and court to consider aggravated and mitigating circumstances. The court found the crime to have been committed "in an extremely heinous, atrocious and cruel manner." Our examination of the record shows the crime arose from a love triangle in which the Appellant flew into a violent rage after the husband of the woman he loved had beaten her. Appellant grabbed a 19-inch breaker bar and beat the husband's skull with lethal blows and then continued beating, bruising and cutting the husband's body with the metal bar after the first fatal injuries to the brain. That conduct alone justified a finding of premeditated murder, but we see nothing more shocking in the actual killing than in a majority of murder cases reviewed by this Court.
The attainment of a new depth in what one man can do to another, even in death, occurred several hours after the killing when Appellant used a saw, machete and fishing knife to dismember the body of his former friend and placed it in Cypress Creek. It is our opinion that when Arnold Tresch died, the crime of murder was completed and that the mutilation of the body many hours later was not primarily the kind of misconduct contemplated by the Legislature in providing for the consideration of aggravating circumstances. If mutilation had occurred prior to death or instantly thereafter it would have been more relevant in fixing the death penalty.
In mitigation the record shows no prior arrests and that Appellant was a highly decorated Green Beret in Special Forces in the Vietnam war. Police officers testified he was under emotional strain over the mistreatment of Sandra by the victim and that Appellant was greatly influenced by her. There is testimony that she had attempted suicide, that she had rushed to him previously for help in marital conflicts, and that he cancelled diving instruction trips when she was in trouble.
As required by statute, we have weighed both the aggravating and the mitigating circumstances as shown in the record, and we conclude that the death penalty is not warranted.
*562 Accordingly, the judgment of guilty of first degree murder is affirmed, but this cause is remanded to the trial court with instructions to reduce the penalty to life imprisonment without eligibility for parole for twenty-five years.
It is so ordered.
BOYD, SUNDBERG and DREW (Retired), JJ., concur.
ROBERTS, J., concurs in affirmance of conviction, but would also affirm penalty, with which ADKINS, C.J., and OVERTON, J., concur.
ENGLAND, J., concurs in the result of opinion.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
[2] 274 So.2d 519 (Fla. 1973).
[3] 283 So.2d 1 (Fla. 1973).