366 So.2d 1 (1978)
Lenson HARGRAVE, Appellant,
v.
STATE of Florida, Appellee.
No. 48135.
Supreme Court of Florida.
June 30, 1978.
Rehearing Denied February 6, 1979.
*2 Bennett H. Brummer, Public Defender, and Paul Morris, Asst. Public Defender, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before us on direct appeal from a conviction of murder in the first degree and a sentence of death imposed by the Circuit Court for Dade County, Florida. Jurisdiction vests in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution.
In the early evening of May 19, 1974, appellant committed a robbery at a U-Tote-M Store in Miami. In a statement which appellant later gave to police officers, he described what transpired at the scene of the crime. When appellant entered the store, only the clerk was present. Appellant announced his intention to rob the store and ordered the clerk to relinquish the money in the cash register. The clerk's attempt to comply proved futile when the register jammed. His demand not met, appellant shot the employee twice in the chest. He then endeavored to open the cash register himself but was unable to do so. Thereupon, a customer walked in. Appellant diverted him without arousing suspicion. When the customer exited, appellant proceeded to shoot his victim for the third time. Appellant later claimed that he fired the third shot from a fear of being apprehended.
After the killing, at a nearby parking lot, appellant met a friend, Lawrence Karge, who had previously been employed at the U-Tote-M Store in which the robbery and murder of the cashier occurred. Karge had planned the robbery with Hargrave and had given appellant detailed information about the store's alarm and security devices. Karge drove Hargrave home, where the appellant remained for a short time before leaving for his job as a night security guard.
Approximately seven months later, an informant named Terry Morton contacted the Miami Police Department relative to the U-Tote-M Store homicide. Both Karge and appellant, on separate occasions, had told the informant about the homicide.
Two days after receiving this information, the police placed the respective residences of Karge and Hargrave under surveillance. Shortly thereafter a vehicle which contained the two suspects was stopped. Appellant was taken to the homicide office where he waived his Miranda rights and signed a statement confessing to the killing and identifying the location of the murder weapon.
At a suppression hearing, appellant's counsel sought to prevent admission of both the inculpatory statement and the murder weapon as the fruits of an illegal arrest. The trial court found the confession voluntary. Both items were admitted into evidence. At the conclusion of the trial, the jury found Hargrave guilty of first degree murder.
At the penalty trial, testimony was received from both state and defense witnesses which suggested that the appellant was mentally deficient, insecure, and fearful. The State also produced two witnesses  Karge's girlfriend and the informant's sister  who testified that the appellant had told each of them that he had killed someone before, and that it would not bother him to kill again.
The jury returned an advisory sentence of death. At a sentencing hearing before the judge on July 18, 1975, defense counsel moved that the court order a presentence report pursuant to Fla.R.Crim.P. 3.710. Defense counsel proffered the fact that the instant conviction was the defendant's first felony conviction. The motion was denied. The trial judge entered the following judgment imposing the death penalty.
THIS CAUSE CAME on before the Court for trial by Jury, and after deliberations a verdict was rendered, finding the *3 defendant guilty of Murder in the First Degree.
Thereafter, the defendant was adjudicated guilty by the Court, and the jury after hearing additional matters, retired to consider an advisory sentence pursuant to Florida Statute 921.141(2). The majority returned and in open court recommended that this Court impose the death penalty upon the defendant.
This Court, independent of, but in agreement with, the advisory sentence rendered by the jury does hereby impose the death penalty upon the defendant LENSON A. HARGROVE, [sic] and in support thereof as required by Florida Statute 921.141(3), submits this, its written findings upon which the sentence of death is based.
The findings of the Court are as follows:
1. That the aggravating circumstances found by the Court to be present and listed by the Court with the lettering as set forth in Florida Statute 921.141(5), are as follows:
(d) That the capital felony was committed while the defendant was engaged in the attempt to commit a robbery.
(e) That the capital felony was committed for the purpose of avoiding or preventing a lawful arrest.
(f) That the capital felony was committed for pecuniary gain.
(h) That the capital felony was especially heinous, atrocious or cruel, in that, after initially shooting the victim and while the victim lay helplessly bleeding on the floor, the defendant deliberately leaned over the counter and shot the victim in the head.
2. That none of the remaining aggravating circumstances, set out by statute to be considered, were proved beyond a reasonable doubt.
3. That as to mitigating circumstances, the Court finds as follows:
(a) That there is some evidence of prior criminal activity on the part of the defendant; however, there have been no prior convictions so that it must fairly be said that the defendant has no significant history of criminal activity.
(b) That the defendant was not under the influence of extreme mental or emotional disturbance when the capital felony was committed.
(c) That the victim was not a participant in the defendant's conduct nor did he consent to his acts.
(d) That the defendant was not merely an accomplice in the capital felony committed by another person and that his participation was not relatively minor.
(e) That the defendant did not act under extreme duress or under the substantial domination of another person.
(f) That although there is some evidence of a personality defect in the defendant and some possibility of an impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, the Court finds that such capacity was not substantially impaired.
(g) That the age of the defendant at the time of the crime, that is, a few days less than 19 years, is a mitigating circumstance; however, he was, at the time of the crime, self-supporting as an adult being employed by a security company. The Court finds that the defendant is of average intelligence or possibly slightly less than average intelligence.
4. It may be, as alleged by the defense, that there could be some doubt as to whether the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired to some degree. There is no doubt that the defendant has a history of some mental abnormalities which may yet be affecting the defendant; however, it is the finding of the Court that such abnormalities only constitute a personality defect. A great number, possibly a majority of all persons who commit crimes, also have this or a similar type of personality defect.
5. The Court is in agreement with the Jury that the aggravating circumstances in this case outweigh the mitigating circumstances. *4 Therefore, the Court has no choice under the law but to impose the death penalty upon the defendant, LENSON A. HARGRAVE.
WHEREFORE, IT IS,
ORDERED AND ADJUDGED as follows:
1. That you, LENSON A. HARGRAVE, be, and you are hereby sentenced to death.
2. That you are hereby remanded to the custody of the Dade County Department of Corrections to be conveyed to the State Division of Corrections for execution of this sentence according to law.
DONE AND ORDERED in open Court, at Miami, Dade County, Florida, this 18th day of July, A.D., 1975.
 /s/ GENE WILLIAMS 
 CIRCUIT JUDGE
On this appeal appellant urges three points for reversal. Each relates only to the sentence imposed. We restate the points in the order of our treatment of them: (i) whether the imposition and execution of the sentence of death under Section 921.141, Florida Statutes (1975), constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution; (ii) whether the trial court erred in sentencing the defendant without the benefit of a presentence investigation report as requested by defense counsel; and (iii) whether the trial court erred in imposing the death penalty. Before directing our attention to the specific points raised by appellant, we note that pursuant to Fla.App.Rule 6.16 b. we have reviewed the evidence to determine if the interests of justice require a new trial. We conclude that the verdict and the judgment of guilt do not fail for insufficiency of the evidence. Implicit in this determination is our concurrence in the ruling by the trial court upon the motion to suppress.
With respect to the first issue raised, this Court's decision in State v. Dixon, 283 So.2d 1 (Fla. 1973), and the decision of the United States Supreme Court in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), are dispositive.
To the same extent, our decision in Thompson v. State, 328 So.2d 1 (Fla. 1976), determines adversely to appellant his assertion that the trial court was required by Fla.R.Crim.P. 3.710 to request a presentence investigation before sentencing Hargrave. In Thompson this Court concluded, essentially, that upon return of a verdict of guilty in a first degree murder case the discretion of the trial judge is limited to two alternatives, i.e., death or life imprisonment. Probation is not a sentence alternative and, therefore, the second sentence of Fla.R.Crim.P. 3.710 is inapplicable in a death case. The import of the mandatory provisions of Rule 3.710 is made clear by the fact that it exempts the necessity for a presentence investigation report for first felony offenders and those under age 18 where probation has already been determined by the judge to be the appropriate sentence. Furthermore, that the failure of the trial court to order an investigation was not prejudicial to appellant is apparent from the face of the sentencing judgment. The trial court did not find as an aggravating circumstance that appellant had previously been convicted of another capital felony or of a felony involving the use or threat of violence to another person. Rather the trial court found in mitigation that although there was some evidence of prior criminal activity on the part of the defendant, there were no prior convictions "so that it must fairly be said that the defendant has no significant history of criminal activity."
We come now to that part of our function of review under this State's death statute which is different from the scope of this Court's review in all other proceedings. We are mandated by Section 921.141(4), Florida Statutes (1975), automatically to review not only the judgment of conviction, but also the sentence of death. As pointed out in Proffitt v. Florida, supra, the final review of sentence in this Court supplies the channeled discretion and deliberation necessary to avert the constitutional deficiencies condemned in Furman v. Georgia, *5 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, this Court's role is not and should not be to cast aside that careful deliberation which the matter of sentence has already received by the jury and the trial judge, unless there has been a material departure by either of them from their proper functions prescribed by Section 921.141, Florida Statutes (1975), or unless it appears that in view of other decisions concerning imposition of the death penalty the punishment is too great. State v. Dixon, supra.
In the instant case appellant maintains there has been just such a departure by the trial judge in (i) finding two aggravating circumstances arising out of the single act of attempted robbery (those set forth in Section 921.141(5)(d) and (f), Florida Statutes [1975]); (ii) finding that the capital felony was especially heinous, atrocious, or cruel; and (iii) failing to find the existence of three mitigating circumstances disclosed by the evidence. The asserted mitigating circumstances are: (a) Section 921.141(6)(b)  defendant was under an extreme mental or emotional disturbance; (b) Section 921.141(6)(f)  the defendant's capacity to conform his conduct to the requirements of law or appreciate the criminality of his act was substantially impaired; and (c) Section 921.141(6)(e)  defendant was substantially dominated by another person.
We deal first with the aggravating circumstances. Although Provence v. State, 337 So.2d 783 (Fla. 1976), condemns the doubling up of the aggravating circumstances of pecuniary gain each time a crime such as robbery is concerned, the mere recitation of both circumstances does not in all cases call for a condemnation of the sentencing hearing and judgment. As State v. Dixon, supra, teaches us, the statute does not comprehend a mere tabulation of aggravating versus mitigating circumstances to arrive at a net sum. It requires a weighing of those circumstances. Absent the circumstance of pecuniary gain, there were ample other statutory aggravating circumstances to place on the scale to weigh against the valid mitigating circumstances.
Appellant questions the trial court's finding of one of those additional aggravating circumstances when he states that it is improper under several of our earlier decisions to characterize this capital felony as especially heinous, atrocious, or cruel. The trial judge made this finding predicated upon the defendant's act of deliberately shooting the victim in the head after he had already rendered him helpless by shooting him twice in the chest. In more common terms, the appellant in a calculated fashion "executed" the victim to avoid later identification. A short colloquy from the appellant's inculpatory statement is instructive on this point:
DETECTIVE MAJOR: "When you shot the clerk the third time, did you intend to kill him?"
THE DEFENDANT: "Yes, I did."
DETECTIVE MAJOR: "Why did you want to kill the clerk?"
THE DEFENDANT: "Because I was scared, and I was aggravated."
DETECTIVE MAJOR: "Why were you scared?"
THE DEFENDANT: "I was afraid I was going to get caught."
To this may be added the testimony of Karge's girlfriend and Morton's sister who stated that appellant had told each of them that he had killed someone before, and it would not bother him to kill again. The sum of all this evidence justifies a finding that the appellant's act of firing the third shot into the head of the victim was "extremely wicked or shockingly evil." See Alford v. State, 307 So.2d 433, 444 (Fla. 1975); State v. Dixon, supra.
Returning to appellant's argument that the trial judge erred in failing to find the mitigating circumstances delineated above, we respond that the jury and the judge could have resolved the evidence in favor of appellant's position, but neither was compelled to do so. We are not here dealing with a case where either the jury or the court considered matters it should not have considered or failed to consider matters it should have considered. Appellant *6 simply disagrees with the force and effect given to the testimony of a psychologist and a psychiatrist at the sentencing hearing. The trial judge conscientiously assessed the testimony of the experts and found that although there was "some evidence of a personality defect in the defendant and some possibility of an impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, the Court finds that such capacity was not substantially impaired." (Emphasis supplied) The trial judge further observed that appellant is of average intelligence or possibly slightly less than average intelligence. It is apparent, then, that the trial judge did not ignore or fail to consider the psychological evidence bearing on mitigation. Obviously, he and the jury were not persuaded that it provided a sound basis for establishment of the statutory mitigating circumstances.
The proposition that appellant was under the domination of Karge is in the same posture. Although the defense psychiatrist offered evidence that Hargrave could be dominated, and although appellant's mother testified that her son was dominated by Karge, the State's psychologist, who tested both Hargrave and Karge, concluded that appellant "certainly played the dominant role." Clearly the jury and the judge who heard the testimony resolved the conflict against the appellant.
In the performance of our constitutional duty, we have reviewed the same testimony and evidence upon which the trial judge and jury based their conclusions. We cannot say that the judgment reached by them is at material variance with our interpretation of the evidence, nor is it contrary to law. Accordingly, the judgment of conviction and the sentence of death are hereby affirmed.
It is so ordered.
OVERTON, C.J., and ADKINS, ENGLAND and SUNDBERG, JJ., concur.
BOYD and HATCHETT, JJ., concur in part and dissent in part with opinions.
BOYD, Justice, concurring in part and dissenting in part.
I concur in the majority opinion affirming appellant's guilt. The aggravating circumstances found by the trial court are supported by evidence in the record.
As to mitigating circumstances, the trial judge found two: (a) Hargrave's youth at the time of the crime (he was eighteen), Section 921.141(6)(g), and (b), no significant history of prior criminal activity, Section 921.141(6)(a). As recognized by the majority, there might be added, since there is competent evidence of them in the record, two other mitigating circumstances: that Hargrave's appreciation of the criminality of his conduct was substantially impaired, Section 921.141(6)(f), and that he was under the substantial domination of another person, Section 921.141(6)(e).
In my opinion the quality of the two mitigating circumstances measured against the aggravating circumstances tips the sentencing scale in favor of life. The balance is more clearly in favor of life if the two mitigating circumstances not found by the trial judge,[1] but which have some support in the record, are considered.
I would reduce the sentence to life imprisonment without eligibility for parole for twenty-five years.
HATCHETT, Justice, concurring in part and dissenting in part.
I concur in the conviction but agree with appellant that the trial judge committed error in sentencing him without benefit of a presentence investigation report and would return the case to the trial court for resentencing.
Florida Rule of Criminal Procedure 3.710 provides:
In all cases in which the court has discretion as to what sentence may be imposed, the court may refer the case to the probation and parole commission for investigation *7 and recommendation. No sentence or sentences other than probation shall be imposed on any defendant found guilty of a first felony offense or found guilty of a felony while under the age of 18, until after such investigation has first been made and the recommendations of the Commission received and considered by the sentencing judge.
The rule clearly requires a judge to order a presentence investigation report in all cases where a defendant has not previously been convicted of a felony. Harden v. State, 290 So.2d 551 (Fla. 1st DCA 1974); Mitchum v. State, 292 So.2d 620 (Fla. 1st DCA 1974); Still v. State, 296 So.2d 67 (Fla. 1st DCA 1974); Nordone v. State, 307 So.2d 907 (Fla. 3rd DCA 1975); Lopes v. State, 309 So.2d 591 (Fla. 2nd DCA 1975); Buckles v. State, 310 So.2d 748 (Fla. 1st DCA 1975); Grubbs v. State, 311 So.2d 411 (Fla. 2nd DCA 1975); Davenport v. State, 317 So.2d 851 (Fla. 1st DCA 1975); Beverly v. State, 330 So.2d 527 (Fla. 1st DCA 1976). The record shows that appellant had no prior felony convictions. He was thus entitled to the benefit of a presentence investigation.
Relying on Thompson v. State, supra, the majority holds that once the jury returns a verdict of first degree murder the trial court is exempt from the mandatory presentence requirements of the rule. The court in Thompson based its decision on the committee note following the rule:
The rule provides for the utilization of a presentence report as part of the sentencing process. While use of the report is discretionary in all cases, it is mandatory in two instances, the sentencing of a first felony offender and of a defendant under 18 years of age. Of course, no report is necessary where the specific sentence is mandatory, e.g., the sentence of death or life imprisonment in a verdict of first degree murder. (emphasis added)
This comment was written in 1972, prior to Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and prior to enactment of Section 921.141, Florida Statutes (1973). In 1972, the sentence of death in a capital case was, as the comment states, mandatory in the absence of a recommendation of mercy by the jury.[*] In cases in which the jury recommended mercy, life imprisonment was mandatory. Our present capital punishment scheme places in the trial judge discretion he did not have at the time the rule was promulgated. The comment based on the old statute is no longer valid.
The majority holds "probation is not a sentence alternative, and therefore the second sentence of Fla.R.Crim.P. 3.710 is inapplicable in a death case." The rule itself is not limited to cases in which probation is an alternative. It does not dictate how many or what kind of sentencing alternatives the trial judge must have. It speaks only in terms of "discretion as to what sentence may be imposed." Florida judges now have discretion (reasonable and controlled) as to what sentence may be imposed in a capital case. State v. Dixon, 283 So.2d 1 (1973). This is all that is required to trigger the rule. We so held in Swan v. State, 322 So.2d 485 (Fla. 1975) at 488:
P.S.I. reports are provided for in Fla.R.Cr.P. 3.710. Rule 3.710 vests the trial court with the discretionary power to request a P.S.I. report in cases wherein the trial court possessed discretion as to the imposition of sentence. Section 921.141, Florida Statutes, vests the trial court with the limited discretion to impose either the death penalty or life imprisonment even if the jury recommends to the contrary. Thus, the discretionary nature of Section 921.141 brings it within the ambit of Rule 3.710.
The position taken by the majority, in its reliance on Thompson, suggesting that there is no sentencing discretion left in the trial judge raises serious questions concerning the constitutionality of our present statute. *8 Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Thompson should be overruled, not followed, in order to prevent any doubt as to the constitutionality of our statute.
In imposing sentence in a capital case, the fundamental respect of humanity underlying the Eighth Amendment requires the trial judge to take into consideration the character and record of the defendant as well as the offense for which he was convicted. Woodson v. North Carolina, supra. Practically speaking, at a time when state attorneys are seeking the means to pay witness fees for witnesses to travel from one county to another where there has been a change of venue, when public defenders are hard pressed to get funds for depositions, it is unrealistic to believe that a defendant facing sentence without the benefit of presentence investigation reports will be able to present to the sentencing judge out of state school reports, health records, or other favorable information regarding his character and record.
The rule as construed by the majority requires a presentence investigation report for all offenders under 18 years of age or convicted of a first felony offense, except those convicted of first degree murder. If presentence investigation reports are to be mandatory for anyone, surely they should be mandatory where one faces the ultimate penalty.
NOTES
[1] Even the trial judge had second thoughts about the "substantial impairment" circumstance. See Finding No. 4, p. 3, of the majority opinion.
[*] Section 921.141, Fla. Stat. (1971) states in pertinent part:

(1) Recommendation to mercy.  A defendant found guilty by a jury of an offense punishable by death shall be sentenced to death unless the verdict includes a recommendation to mercy by the jury. When the verdict includes a recommendation to mercy by the jury, the court shall sentence the defendant to life imprisonment.