411 So.2d 172 (1982)
Luis Carlos ARANGO, Appellant,
v.
STATE of Florida, Appellee.
No. 59678.
Supreme Court of Florida.
January 21, 1982.
Rehearing Denied April 8, 1982.
*173 Vincent J. Flynn of Flynn, Rubio & Tarkoff, Miami, for appellant.
Jim Smith, Atty. Gen. and Anthony C. Musto and Joel D. Rosenblatt, Asst. Attys. Gen., Miami, for appellee.
PER CURIAM.
Arango appeals his convictions of murder in the first degree and possession of a controlled substance and his sentence of death. He alleges that the trial court committed four errors. We find, however, that only three issues raise points that warrant discussion at any length.[1] None of the issues raised require a reversal of the trial court's judgment or sentence. Hence, we affirm appellant's convictions and sentence.[2]
In March of 1980, the Dade County police received a telephone call from the manager of a Miami apartment complex reporting a disturbance. Upon their arrival, the manager reported that subsequent to telephoning he had heard what he thought was the sound of glass breaking. The police went upstairs and knocked on appellant's apartment door. A neighbor then motioned to them that some kind of activity was occurring at the other end of the apartment. Passing the front window, the officers observed cracked glass on the walkway and what appeared to be a bullet hole in the window. They knocked several times and, after receiving no response, entered through the unlocked kitchen door. Once inside, they found and detained appellant. A search of the bedroom was then conducted. On the bed lay the body of the deceased, who had an electrical cord wrapped around his neck, multiple lacerations on his face, and two gunshot wounds to his head. Cocaine, pistols, and $7,800 in cash, among other items, were seized from the premises.
The grand jury indicted appellant for first-degree murder and possession of a controlled substance. A motion to suppress evidence allegedly obtained illegally was filed and later denied, the trial judge having *174 determined that the warrantless search was justified under the circumstances.
The jury found appellant guilty of both charges and recommended the death sentence. At the conclusion of the penalty phase of the proceeding, the trial judge found the existence of one aggravating and one mitigating circumstance and imposed the sentence of death.
Appellant first contends that the trial court erred in denying his motion to suppress evidence allegedly obtained by an illegal search and seizure. He relies on Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which held that the fourth amendment provides protection against a warrantless entry into a person's home for the purpose of making a routine felony arrest. However, the rule in Payton does not apply where there are exigent circumstances. As we have made clear in our decisions, the need to protect life and to prevent serious bodily injury provides justification for an otherwise invalid entry. This exception governs here.
As we recently held in Zeigler v. State, 402 So.2d 365 (Fla. 1981), the police may enter a dwelling without a warrant if they have credible information that a person's life may be in danger. In this case, the police acted under the reasonable belief that a person was either dead or dying inside appellant's apartment. The telephone call and subsequent report from the manager, the cracked glass and bullet hole, and the neighbor's indication of a commotion were sufficient indicia of an emergency situation. Accordingly, no warrant was required, and the motion to dismiss was properly denied.
Appellant next maintains that the instructions given to the jury impermissibly allocated the constitutionally prescribed burden of proof. At one point in the trial proceeding, the judge stated that if the jury found the existence of an aggravating circumstance, it had "the duty to determine whether or not sufficient mitigating circumstances exist to outweigh the aggravating circumstances." This instruction, appellant argues, violates the due process clause as interpreted in Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
In Mullaney the Supreme Court held that a Maine law requiring the defendant to negate the existence of malice aforethought in order to reduce his crime from homicide to manslaughter did not comport with due process. Such a rule, the Court wrote, is repugnant to the fourteenth amendment guarantee that the prosecution bear the burden of proving beyond a reasonable doubt every element of an offense. In Dixon we held that the aggravating circumstances of section 921.141(6), Florida Statutes (1973), were like elements of a capital felony in that the state must establish them.
In the present case, the jury instruction, if given alone, may have conflicted with the principles of law enunciated in Mullaney and Dixon. A careful reading of the transcript, however, reveals that the burden of proof never shifted. The jury was first told that the state must establish the existence of one or more aggravating circumstances before the death penalty could be imposed. Then they were instructed that such a sentence could only be given if the state showed the aggravating circumstances outweighed the mitigating circumstances. These standard jury instructions taken as a whole show that no reversible error was committed.
Appellant also argues that the trial court erred in imposing the death penalty. One aggravating circumstance was found applicable here: the homicide was considered "especially heinous, atrocious, or cruel." § 921.141(5)(h), Fla. Stat. (1979). Appellant established in mitigation his total lack of prior criminal activity. § 921.141(6)(a), Fla. Stat. (1979). He maintains that unless we are willing to recede from earlier capital cases construing this statute, his sentence of death is disproportionate punishment. Citing to Halliwell v. State, 323 So.2d 557 (Fla. 1975), Swan v. State, 322 So.2d 485 *175 (Fla. 1975), and Taylor v. State, 294 So.2d 648 (Fla. 1974), he claims that we are compelled to reduce his sentence from death to life imprisonment.
Looking at the facts present here, we see that the cases cited by appellant are clearly distinguishable. In the instant case, the trial judge found that appellant beat the victim with a blunt instrument many times about the head and body. Deep cuts were made on the face, causing severe hemorrhaging. The wire used in a TV remote control device was wrapped around the victim's neck, choking him. A large towel stuffed into the victim's mouth prevented his breathing. After beating and strangling him, appellant shot the victim twice in the head.
Halliwell, on the other hand, involved a love triangle in which the appellant mutilated the body of the deceased several hours after the murder was completed. We reduced Halliwell's sentence from death to life imprisonment, holding that such conduct was not the kind contemplated by the legislature in providing for the consideration of aggravating circumstances. In the present case, the record shows that the beatings occurred prior to the murder, precisely the same factor we held in Halliwell was "relevant in fixing the death penalty." 323 So.2d at 561.
Swan is also different because there the trial judge overrode the jury's recommendation of life imprisonment. As we have often stated, such a decision must be based on clear and convincing facts that the death penalty is appropriate. Tedder v. State, 322 So.2d 908 (Fla. 1975). The state introduced no evidence showing why Swan should be electrocuted, and the record did not demonstrate facts sufficient to satisfy Tedder.
Taylor, like Swan, involved a trial judge's rejection of a jury's recommendation of a life sentence. We reversed the sentence of death, finding that a multiplicity of factors could have influenced the jury to be lenient, including the possibility that the appellant was not the "triggerman" in the murder for which he was charged. In the case before us the jury, in view of only one mitigating circumstance, recommended death. The trial judge, after considering the totality of circumstances and exercising his reasoned judgment, adopted the jury's advisory sentence.
As we said in Hargrave v. State, 366 So.2d 1, 5 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979), the death penalty statute does not contemplate "a mere tabulation of aggravating versus mitigating circumstances to arrive at a net sum." Instead, it places upon the trial judge the task of weighing all these factors. We believe that the trial court properly performed this function.
For the reasons expressed, we affirm the convictions and sentence.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON and ALDERMAN, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which BOYD, J., concurs.
McDONALD, Justice, concurring in part/dissenting in part.
While I concur that there was no trial error, that there was sufficient evidence to sustain the conviction, and that it was the jury's function to believe or disbelieve the defendant, I do not believe that this homicide justifies the death penalty. The trial judge predicates the imposition of the death penalty on the single aggravating factor that the crime was especially heinous, atrocious and cruel. The facts of this case do not support that finding, as we have defined it in State v. Dixon, 283 So.2d 1 (Fla. 1973), beyond a reasonable doubt. Even if they did, that single aggravating factor should not, in this case, warrant the death penalty. The defendant, a Colombian, has no past criminal record, but was a user of drugs. The deceased, also a Colombian, and a friend of the appellant, was a dealer in drugs from whom the defendant had previously purchased drugs. While there is a suspicion that the parties may have been involved in a drug transaction, *176 no one knows why this homicide was committed. Nevertheless, the circumstances fall short of showing aggravating circumstances sufficient to impose the death penalty. I would reduce the sentence to life imprisonment.
BOYD, Justice, concurs:
I concur in the majority opinion affirming guilt, but I concur with Justice McDonald's opinion that life imprisonment and not death is the appropriate penalty.
NOTES
[1] Arango also contends that a prospective juror was improperly excused for cause. The record, however, clearly reveals that the venireman could not render an impartial decision as to appellant's guilt. See Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
[2] Jurisdiction vests under article V, section 3(b)(1) of the Florida Constitution, and section 921.141(4) of the Florida Statutes (1979).