474 So.2d 777 (1985)
Frank GRIFFIN, Appellant,
v.
STATE of Florida, Appellee.
No. 62819.
Supreme Court of Florida.
May 2, 1985.
Rehearing Denied September 17, 1985.
*778 Melvin S. Black, Miami, for appellant.
Jim Smith, Atty. Gen. and Jack B. Ludin, Asst. Atty. Gen., Miami, for appellee.
EHRLICH, Justice.
Frank Griffin was convicted and sentenced for armed robbery and first degree murder. Because he was sentenced to death, we have jurisdiction on this first appeal. Art. V, § 3(b)(1), Fla. Const. We affirm the judgment of the trial court.
The clerk at a Miami U-Tote-M convenience store was shot twice and killed during a robbery in the early morning hours of April 2, 1981. Six weeks later the driver of the getaway car implicated Griffin and another man, Stokes, in a statement to police. May 19, 1981, detectives went to the Dade County jail, where Griffin was awaiting trial on unrelated charges. Griffin was taken from the jail after protesting his removal, driven by the convenience store, then taken to the police station where the interrogation continued. Griffin denied involvement and was returned to jail.
Griffin was indicted March 5, 1982, almost a year after the crime. Trial was delayed. In September 1982, shortly before trial, the circuit court granted Griffin's motion to suppress a statement made during the May 19, 1981, interrogation on the ground that he had not knowingly and voluntarily waived his Miranda rights. The court denied a speedy trial motion to discharge based on the argument that Griffin had been arrested for the robbery and murder when he was interrogated in 1981.
Stokes testified against Griffin at trial as part of a plea agreement. His testimony was consistent with, and thus buttressed by, evidence that Griffin's fingerprint was found on the cash-register counter at the scene, and testimony from two citizens who had witnessed events immediately before and after the crime.
Griffin did not take the stand during either phase of the trial, nor did he present any evidence during the guilt phase. The jury found him guilty of first degree murder and armed robbery. They unanimously recommended death, and the judge concurred, finding five aggravating and no mitigating factors. She sentenced Griffin to death for the murder and a consecutive life sentence for the armed robbery.
Griffin moved for a new trial, based on statements by two prisoners that Stokes told them he and Griffin had not held up the store, but that he was going to give false testimony at the trial and had been coached on the testimony. The judge denied the motion. Griffin appealed to this Court.

I. SPEEDY TRIAL
Griffin claims that the trial court erred when it refused to discharge him for failure to bring him to trial within the speedy trial time. Fla.R.Crim.P. 3.191. The motion for discharge was grounded on Griffin's claim that he was arrested for the crime during his first interrogation by police May 19, 1981. The trial judge found the circumstances of that interrogation sufficiently *779 coercive that she suppressed a statement made during the "interview."[1]
A seizure may trigger fourth amendment protection and yet not be a technical arrest. Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). And a person may be "in custody" for purposes of Miranda requirements but not for purposes of the speedy trial rule. State v. Robbins, 359 So.2d 39 (Fla. 2d DCA 1978). In Florida a person is "in custody" for speedy trial purposes when he is "arrested as a result of the conduct or criminal episode which gave rise to the crime charged." Rule 3.191(a)(4). Griffin was not arrested in 1981 based on the definition of a technical arrest set out in Melton v. State, 75 So.2d 291 (Fla. 1954). See also State v. Breedlove, 400 So.2d 468 (Fla. 4th DCA), review denied, 402 So.2d 608 (Fla. 1981).
Griffin also claims a speedy trial violation assuming arrest in 1982. However, the basis for his motion for discharge was grounded solely on the theory that arrest occurred in 1981 and this issue is not preserved for appeal.

II. JURY INSTRUCTIONS  GUILT PHASE
Griffin argues that the trial judge erred when she omitted three sentences from the standard jury instructions on first degree murder.[2] He specifically claims fundamental error in the omission of a sentence instructing that premeditated intent to kill must be formed before the killing. While it is certainly best to include this sentence, we find no error here. Every sentence of the paragraph defining premeditation inherently instructs that the intent must arise at some indeterminate time before the killing. Likewise, the two introductory sentences which were omitted merely state there are two ways to convict for first degree murder. Since the information conveyed in the introduction is patently obvious from the remainder of the instructions, which were given, the instruction was inessential in this case. Defense counsel failed to object at trial, and the omission does not constitute fundamental error. State v. Bryan, 287 So.2d 73, 75 (Fla. 1973), cert. denied, 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974): "What is important is that sufficient instructions  not necessarily academically perfect ones  be given as adequate guidance to enable a jury to arrive at a verdict based upon the law as applied to the evidence before them."

III. SEPARATE CONVICTIONS AND SENTENCES FOR MURDER AND ROBBERY
The indictment for first degree murder alleged premeditated and felony murder *780 in the alternative. The jury verdict form did not specify on which theory the jury based its finding of guilt. Griffin argues that the conviction rests on the felony murder theory. However, we find that there was sufficient evidence for the jury to have concluded that the murder was premeditated and that the separate conviction and sentence for the robbery were therefore proper.
The record shows that Griffin's accomplice, Stokes, was in the store when the shooting occurred. Stokes testified that he did not see the shots fired. He had turned his back to leave the store moments before the first shot, turned and saw the clerk falling, then turned again to leave when he heard the second shot. There is no indication in the record that the clerk precipitated an accidental or reflexive shooting which would support a felony murder theory.
We have held that:
Premeditation can be shown by circumstantial evidence. Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which an act of killing ensues. Premeditation does not have to be contemplated for any particular period of time before the act, and may occur a moment before the act. Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of his victim is concerned.
Sireci v. State, 399 So.2d 964, 967 (Fla. 1981) (citations deleted), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). We find that Griffin used a particularly lethal gun, a 9mm automatic with jacketed bullets having a high penetrating ability; that there was an absence of provocation on the part of the victim (Stokes testified he heard and saw nothing unusual prior to the first shot, and the victim in fact cooperated with the robbery, taking off and giving to Stokes a gold neck chain Stokes had been unable to pull off); and that the wounds, one lethal, the other less serious, were inflicted at close range and thus unlikely to have struck the victim unintentionally. This is sufficient to support a finding of premeditation. Cf. Menendez v. State, 419 So.2d 312 (Fla. 1982) (presumption of felony murder when there was no witness to see or hear the actual shooting in a store robbery, thus no evidence of provocation or lack thereof by the victim). Because the murder verdict is supportable on a premeditated murder theory, the robbery conviction and sentence are proper. Squires v. State, 450 So.2d 208 (Fla. 1984); Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984).

IV. AGGRAVATING AND MITIGATING CIRCUMSTANCES

Aggravating Factors
Griffin challenges all five of the aggravating factors found by the trial judge.
1. Prior conviction for felony involving the use of violence. § 921.141(b)(b), Fla. Stat. (1981).
The judge noted two convictions in evidence, the armed robbery conviction of the present case, and a 1977 conviction for resisting arrest with violence to a police officer. Griffin argues that the use of the armed robbery conviction is improper and that the resisting arrest conviction is alone insufficient to support the aggravating factor. A contemporaneous conviction may properly be considered in the penalty phase. Hardwick v. State, 461 So.2d 79 (Fla. 1984). However, just as murder during commission of a robbery, an aggravating circumstance under section 921.141(5)(d), cannot be doubled to support the aggravating circumstance of murder for pecuniary gain under section 921.141(5)(f), *781 Oats v. State, 446 So.2d 90 (Fla. 1984), so too, murder during commission of a robbery cannot also be doubled to support this aggravating circumstance.
This leaves one prior conviction in support of factor (5)(b). Griffin argues that we found a prior conviction for resisting arrest with violence to be insufficient to support a death sentence in Swan v. State, 322 So.2d 485 (Fla. 1975). However, in that case the trial judge specifically declined to consider the prior conviction as a basis for imposing the death penalty. We reversed the sentence on the ground that the record failed to show sufficient aggravating circumstances.
The record shows only that Griffin pleaded guilty to resisting an officer with violence to his person. No evidence was introduced regarding the circumstances of the conviction, and the record does not indicate what, if any, sentence Griffin received for the conviction. While the bare conviction is enough to support the aggravating factor, we do not have to decide whether this circumstance alone would support a sentence of death since we find one other factor also applicable.
2. The murder was committed while engaged in or fleeing from a robbery. § 921.141(5)(d), Fla. Stat. (1981).
That this factor is supported by the record is incontrovertible. Gorham v. State, 454 So.2d 556 (Fla. 1984).
3. The murder was committed for the purpose of avoiding or preventing lawful arrest. § 921.141(5)(e), Fla. Stat. (1981).
We do not agree with the judge that because the victim offered no resistance, and because he was the sole eyewitness, he was killed to avoid arrest. While this is certainly a plausible inference, it is not the only one. There is no direct evidence of why Frank Griffin killed Raul Nieves. There is no evidence that Nieves knew or recognized Griffin. The only evidence of Griffin's state of mind is Stokes' testimony that immediately after the shooting and getting in the getaway car, Griffin said "I shot the cracker. The cracker is bleeding like a hog." Griffin did not answer when Stokes asked why he shot him. This does not support the inference that this was a witness-elimination murder.
Herring v. State, 446 So.2d 1049 (Fla. 1984), is a similar case. Under near identical circumstances, the defendant killed a convenience store clerk with two shots. However, there was testimony from a detective that Herring had expressly stated that he shot a second time to prevent the clerk from being a witness. There is no such evidence here, and this, combined with the specific timing of the shot, discussed infra, leads us to conclude that there is insufficient evidence in this case to establish beyond a reasonable doubt that this was a witness-elimination killing. "[T]he mere fact of a death is not enough to invoke this factor when the victim is not a law enforcement officer." Riley v. State, 366 So.2d 19, 22 (Fla. 1978) (sufficient evidence to support factor when robbery victim knew defendant well and accomplice expressed concern for subsequent identification before the killing).
4. The murder was committed for financial gain. § 921.141(5)(f), Fla.State. (1984).
As the judge properly noted, this factor merges with the second, that the killing was committed during a robbery. Oats v. State, 446 So.2d 90 (Fla. 1984).
5. The murder was cold, calculated and premeditated. § 921.141(5)(i), Fla. Stat. (1981).
We have reviewed the record and find insufficient evidence to support the application of this factor. Again, Herring must be distinguished. In Herring we held:
We have previously stated that this aggravating circumstance is not to be utilized in every premeditated murder prosecution. Rather, this aggravating circumstance applied in those murders which are characterized as execution or contract murders or witness-elimination murders. We have also held, however, that this description is not intended to be all inclusive. In the instant case, the *782 evidence does reflect that appellant first shot the store clerk in response to what appellant believed was a threatening movement by the clerk and then shot him a second time after the clerk had fallen to the floor. The facts of this case are sufficient to show the heightened premeditation required for the application of this aggravating circumstance as it has been defined in [prior cases].
446 So.2d 1057 (citations deleted). Thus in Herring the second shot was fired after the clerk had fallen to the floor in an apparent "coup de grace" shot. In the instant case, the evidence of both Stokes and the medical examiner, who testified about the possible sequence of shots and angles of entry, supports the inference that the second shot was fired as the victim fell to the floor. The second shot in this case was therefore apparently fired more immediately after the first shot than in Herring, with concomitant less time to form the heightened level of premeditation required to support this factor. Cf. Card v. State, 453 So.2d 17 (Fla. 1984) (sufficient time to form heighted level of intent when victim driven eight miles to murder scene). The second shot here appears to be more the product of the initial impetus to premeditatedly kill the clerk than the administration of a final killing shot to ensure death.

Mitigating Factors
We turn, now, to mitigating factors. The trial judge found none. The only evidence presented by the defendant during the entire trial was excerpts from the plea agreements for Stokes and the getaway driver, submitted during the penalty phase. The two were subject to sentences of twenty-five and ten years, respectively, for their roles in the robbery-murder. The trial judge properly rejected this disparity as justified, considering the heightened culpability of Griffin. Disparate sentences were found justified in Meeks v. State, 339 So.2d 186 (Fla. 1976), where the triggerman was sentenced to death, and the accomplice to the robbery, who fled the store during the shooting, was sentenced to life. See also Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979) (life sentence of principal in the first degree does not dictate reversal of defendant's death sentence where defendant dominated the principal and directed the principal in the killing). Cf. Slater v. State, 316 So.2d 539 (Fla. 1975) (defendant's sentence reduced to life where codefendant, who actually shot the victim, was allowed to plead nolo contendere and received life sentence; trial judge had overridden 11-1 jury recommendation of life).
The trial judge found in the alternative that, if the disparate sentences constituted a mitigating factor, the aggravating factors carried the greater weight. However, the finding of no mitigating factors was appropriate, and so, although we have eliminated three of the five aggravating factors used by the judge, we find no necessity to remand to the trial judge for reweighing. Francois v. State, 407 So.2d 885 (Fla. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982). Because our analysis has truncated the list of aggravating factors, we find we must consider whether those factors remaining sufficiently support a sentence of death. Swan v. State, 322 So.2d 485 (Fla. 1975). We do not undertake a mere numerical toting-up of aggravating and mitigating factors, and, under the circumstances of this case, we conclude the sentence is appropriate.

CONCLUSION
We find no merit to the remaining issues raised by appellant.
Accordingly, we find that the convictions and sentences in this case are proper, and we affirm the judgment of the trial court.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD and SHAW, JJ., concur.
NOTES
[1] The detectives took Griffin to the scene of the murder and questioned him before taking him to the police station for further questioning. While parked at the store, Griffin denied ever being in the store, a potentially damaging statement since his fingerprint had been found on the counter. The trial judge suppressed this statement.
[2] The relevant portions of the standard instructions read as follows, with the omitted sentences underlined:

There are two ways in which a person may be convicted of first degree murder. One is known as premeditated murder and the other is known as felony murder. [These two sentences are prefaced by a note to the judge advising that they should be read when there will be instructions on both premeditated and felony murder.]
Before you can find the defendant guilty of First Degree Premeditated Murder, the State must prove the following three elements:
... .
"Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
... .
Before you can find the defendant guilty of First Degree Felony Murder, the State must prove the following three elements beyond a reasonable doubt: ....
Fla.Std.Jury Instr. (Crim.) 63-64. The trial judge read the standard instructions verbatim with the exceptions noted.