427 So.2d 713 (1983)
Lenson A. HARGRAVE, Appellant,
v.
STATE of Florida, Appellee.
No. 61869.
Supreme Court of Florida.
January 13, 1983.
Rehearing Denied March 24, 1983.
Bennett H. Brummer, Public Defender, and Elliot H. Scherker and Karen M. Gottlieb, Asst. Public Defenders, Eleventh Judicial Circuit, Miami, for appellant.
Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., Miami, for appellee.
McDONALD, Justice.
Hargrave appeals the denial of a Florida Rule of Criminal Procedure 3.850 motion by the circuit court which sentenced him to death following his conviction of first-degree murder. We have jurisdiction and affirm the denial.
This Court affirmed Hargrave's conviction and death sentence in Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979). We subsequently denied a habeas corpus petition, Hargrave v. Wainwright, 388 So.2d 1021 (Fla. 1980), and affirmed the denial of a motion for post-conviction relief. Hargrave v. State, 396 So.2d 1127 (Fla. 1981). Relying on Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), Hargrave now claims that the trial court erred by allowing into evidence testimony by a psychologist who examined Hargrave without giving him a Miranda[1] warning prior to the examination. Hargrave asks us to apply Estelle v. Smith retroactively, to vacate his death sentence, and to remand for a new sentencing proceeding. We agree with the trial court that Estelle v. Smith is inapplicable to the instant case.
There are certain similarities between Estelle v. Smith and the instant case. In each a court-appointed expert examined the defendant to determine competency without giving a Miranda warning. Each expert then testified for the state in the sentencing portion of a bifurcated murder trial. There are also, however, significant differences which distinguish Estelle v. Smith from the instant case.
*714 One difference between the two cases is the difference between the Florida and Texas death penalty statutes. In a Texas penalty proceeding the jury must answer at least two, and sometimes three, questions after convicting a defendant of murder.[2] One of these questions, concerning the probability of the defendant's constituting a continuing threat of violence to society, is central to Estelle v. Smith. Florida, on the other hand, has nothing similar to that provision in its death penalty statute.
In Estelle v. Smith the trial court issued an ex parte order for Smith's examination, with no notice to either Smith or his counsel or to the state. Hargrave, on the other hand, requested the appointment of experts to determine his competency to stand trial.[3] Also, in Estelle v. Smith the state, evidently, kept the expert's name off its witness list. Allowing that expert to testify, therefore, surprised Smith in the preparation of his defense. Hargrave can make no such claim.
Hargrave did not object to the state expert's testimony as Smith did. Moreover, Hargrave's counsel extensively cross-examined the state's expert[4] in an effort to establish substantial impairment of Hargrave's capacity to appreciate the criminality of his conduct or to conform his conduct *715 to the requirements of the law.[5] Finally, Smith presented no psychological or psychiatric evidence while Hargrave called a second doctor who had examined him to testify.
In finding a violation of Smith's fifth amendment rights the United States Supreme Court held:
A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. Because respondent did not voluntarily consent to the pre-trial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to Dr. Grigson to establish his future dangerousness.
Estelle v. Smith, 451 U.S. at 468, 101 S.Ct. at 1876. Hargrave does not fit within this holding because he both initiated the psychiatric examination and introduced psychiatric evidence.[6] We find, therefore, that he waived the right, absent a timely objection at trial, to claim a Miranda violation.[7] We have previously held that "[p]ost-conviction relief is not available for a reappeal or a rereview or to raise issues that could have been raised on the initial appeal" in refusing to apply Estelle v. Smith. Alvord v. State, 396 So.2d 184, 191 (Fla. 1981). Again, we do not find Estelle v. Smith to be a change in the law which warrants retroactive post-conviction relief under the standard set out in Witt v. State, 387 So.2d 922 (1980, Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).[8]See Williams v. State, 421 So.2d 512 (Fla. 1982).
If an impropriety at trial rises to the level of a due process violation of a fundamental constitutional right, it may be considered fundamental error which can be raised on appeal in spite of a failure to object at trial. The state expert's testimony does not rise to this level. As previously stated, the state used this testimony to negate a mitigating circumstance. While invoking the death penalty requires that aggravating and mitigating circumstances be weighed, the failure to object to testimony which might result in the failure to find a mitigating circumstance is not fundamental error. When the finding of an aggravating circumstance is an absolute requirement, as in Texas, the unobjected-to evidence might rise to the level of fundamental error. This case, however, does not go so far.
As well as a fifth amendment violation, the United States Supreme Court also found a sixth amendment violation in Estelle v. Smith.
Here, respondent's Sixth Amendment right to counsel clearly had attached when Dr. Grigson examined him at the Dallas County Jail, and their interview proved to be a "critical stage" of the aggregate proceedings against respondent. Defense counsel, however, were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed.
* * * * * *
Therefore, in addition to Fifth Amendment considerations, the death penalty *716 was improperly imposed on respondent because the psychiatric examination on which Dr. Grigson testified at the penalty phase proceeded in violation of respondent's Sixth Amendment right to the assistance of counsel.
451 U.S. at 470-71, 101 S.Ct. at 1877 (citations and footnotes omitted). Hargrave's claim of a sixth amendment violation, however, has no factual basis. He and his defense counsel decided to request the examination. Therefore, it cannot be said that Hargrave was denied counsel regarding the psychiatric examination.
We therefore affirm the trial court's denial of Hargrave's 3.850 motion.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON and EHRLICH, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The Texas death penalty statute provides, in part:

(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.
(c) The state must prove each issue submitted beyond a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue submitted.
(d) The court shall charge the jury that:
(1) it may not answer any issue "yes" unless it agrees unanimously; and
(2) it may not answer any issue "no" unless 10 or more jurors agree.
(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. If the jury returns a negative finding on any issue submitted under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life.
Vernon's Ann.C.C.P. art. 37.071.
[3] Hargrave's order was:

UPON MOTION HAVING BEEN MADE to the Court that the Defendant in the above entitled cause may not be sane, and it appearing unto the Court that there are reasonable grounds to inquire into the sanity of the Defendant to determine his fitness to be tried for the offense with which he is charged, it is therefore
CONSIDERED, ORDERED, AND ADJUDGED that the following disinterested qualified experts, to-wit:
DR. WILLIAM CORWIN DuPont Plaza Center
Miami, Florida
DR. ROBERT SYLVESTER 1688 Meridian Ave.
 Miami Beach, Florida
DR. PAUL S. JARETT Professional Bldg.-Suite 503
 Mercy Hospital
 3661 S. Miami Ave.
 Miami Florida
are hereby appointed to forthwith conduct an examination of the defendant, LENSON ALFRED HARGRAVE, as to his sanity, and it is further
ORDERED that each of the said above experts file, on or before MARCH 17, 1975, a written report, in triplicate, of their examination and opinion with the Clerk of this Court at his office, Room 680, Metropolitan Justice Building, 1351 N.W. 12th Street, Miami, setting forth the following designated particulars, to-wit:
1. General report of the mental condition of the defendant.
2. Opinion as to the capacity of the defendant, presently, to properly answer charges against him and aid in his own defense and stand trial.
3. Opinion as to whether, at the time of the alleged offense with which the defendant is charged, the defendant knew right from wrong and knew the nature and consequences of his acts.
4. Opinion as to whether the defendant should be accorded psychiatric treatment and, if so, recommendations as to what type of treatment.
together with an invoice for their services.
[4] The state called this expert witness to negate a claim that Hargrave was under the domination of another person.
[5] Indeed, on this issue the state's witness gave testimony favorable to Hargrave.
[6] We note that the Fifth Circuit Court of Appeals distinguished Estelle v. Smith on similar grounds in Granviel v. Estelle, 655 F.2d 673 (5th Cir.1981), cert. denied, 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982).
[7] Even constitutional rights can be waived. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); United States v. Sachs, 679 F.2d 1015 (1st Cir.1982); Ray v. State, 403 So.2d 956 (Fla. 1981); Clark v. State, 363 So.2d 331 (Fla. 1978).
[8] The Fifth Circuit Court of Appeals has construed Estelle v. Smith as being retroactive. Battie v. Estelle, 655 F.2d 692 (5th Cir.1981). We find Battie to be neither persuasive nor of precedential value.